Slip Op. 21-132

UNITED STATES COURT OF INTERNATIONAL TRADE

NEXTEEL CO., LTD ,

    Plaintiff,

HYUNDAI STEEL COMPANY and SEAH STEEL CORPORATION,

    Consolidated Plaintiffs,

and

HYUNDAI STEEL COMPANY,

    Plaintiff-Intervenor,

v.

UNITED STATES,

    Defendant,

and

WHEATLAND TUBE COMPANY and NUCOR TUBULAR PRODUCTS INC.,

    Defendant-Intervenors.

Before: Jennifer Choe-Groves, Judge

Consol. Court No. 20-03868

**OPINION AND ORDER**

[Remanding the final results by the U.S. Department of Commerce following the 2017–2018 administrative review of the antidumping duty order on circular welded non-alloy steel pipe from the Republic of Korea.]

Dated:  September 27, 2021

J. David Park, Henry D. Almond, Daniel R. Wilson, Leslie C. Bailey, and Kang Woo Lee, Arnold & Porter Kaye Scholer LLP, of Washington, D.C., for Plaintiff NEXTEEL Co., Ltd.

Jarrod M. Goldfeder and Robert G. Gosselink, Trade Pacific PLLC, of Washington, D.C., for Consolidated Plaintiff and Plaintiff-Intervenor Hyundai Steel Company.

Jeffrey M. Winton, Michael J. Chapman, Amrietha Nellan, and Vi N. Mai, Winton & Chapman PLLC, of Washington, D.C., for Consolidated Plaintiff SeAH Steel Corporation.

Robert R. Kiepura, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.  Of counsel on the brief was Jonzachary Forbes, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Roger B. Schagrin and Elizabeth J. Drake, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Wheatland Tube Company.

Alan H. Price, Robert E. DeFrancesco, III, and Cynthia C. Galvez, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Nucor Tubular Products Inc.

   Choe-Groves, Judge:  Plaintiff NEXTEEL Co., Ltd. ("NEXTEEL"), Plaintiff-Intervenor and Consolidated Plaintiff Hyundai Steel Company ("Hyundai Steel"), and Consolidated Plaintiff SeAH Steel Corporation ("SeAH"), (collectively, "Plaintiffs"), challenge the final results in the 2017–2018 administrative review of the antidumping duty order covering circular welded non-alloy steel pipe ("CWP") from the Republic of Korea ("Korea").  Circular Welded

Non-Alloy Steel Pipe from the Republic of Korea ("Final Results"), 85 Fed. Reg. 71,055 (Dep't of Commerce Nov. 6, 2020) (final results of antidumping duty admin. review; 2017–2018), and accompanying Issues & Decisions Mem. for the Final Results of the 2017–2018 Admin. Review of the Antidumping Duty Order on Circular Non-Alloy Steel Pipe from the Republic of Korea, ECF No. 25-5 ("Final IDM").  Before the Court are Plaintiffs' motions for judgment on the agency record.  Mot. Pl. [SeAH] J. Agency R., ECF No. 36; Br. [SeAH] Supp. Rule 56.2 Mot. J. Agency R., ECF No. 36-1 ("SeAH's Br."); Rule 56.2 Mot. J. Agency R. [NEXTEEL], ECF Nos. 37, 38; Mem. Supp. Pl. [NEXTEEL] Rule 56.2 Mot. J. Upon Agency R., ECF Nos. 37-1, 38-1 ("NEXTEEL's Br."); [Hyundai Steel] Rule 56.2 Mot. J. Agency R., ECF No. 39; Mem. Supp. Mot. [Hyundai Steel] J. Agency R., ECF No. 39-1 ("Hyundai Steel's Br.").

    Defendant United States ("Defendant") responded.  Def.'s Resp. Pls.' Mots. J. on the Agency R., ECF No. 40 ("Defendant's Response" or "Def.'s Resp."). Defendant-Intervenors Wheatland Tube Company ("Wheatland") and Nucor Tubular Products Inc. (collectively, "Defendant-Intervenors") responded jointly. Resp. Br. [Def.-Intervs.], ECF No. 41 ("Defendant-Intervenors' Response" or "Def.-Intervs.' Resp.").

    NEXTEEL and Hyundai Steel replied to Defendant's Response and Defendant-Intervenors' Response.  Reply Br. Supp. Pl. [NEXTEEL] Rule 56.2

Mot. for J. upon the Agency R., ECF No. 43; Reply Br. of Consol. Pl. & Pl.-Interv., [Hyundai Steel], ECF No. 44.  For the following reasons, the Court remands the <u>Final Results</u>.

## ISSUES PRESENTED

The Court reviews the following issues:

1. Whether Commerce's particular market situation adjustment to the cost of production when conducting a sales-below-cost test is in accordance with the law; and

2. Whether Commerce's particular market situation determination is in accordance with the law.

## BACKGROUND

Commerce initiated this administrative review and selected NEXTEEL and Husteel Co., Ltd. ("Husteel") as mandatory respondents.  Decision Mem. for the Prelim. Results of Antidumping Duty Admin. Review: Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: 2017–2018 (Jan. 9, 2020) ("Prelim. DM") at 1, PR 203.[1]  Wheatland submitted a particular market situation allegation ("Petition").  <u>Id.</u> at 9.  Commerce calculated preliminary dumping margins of 31.64% for NEXTEEL, 5.11% for Husteel, and an all-others rate of 23.74%, which

---

[1] Citations to the administrative record reflect the public record ("PR") document numbers.

applied to Hyundai Steel and SeAH.  Circular Welded Non-Alloy Steel Pipe from the Republic of Korea ("Preliminary Results"), 85 Fed. Reg. 2719 (Dep't of Commerce Jan. 16, 2020) (prelim. results of antidumping duty admin. review; 2017–2018).

Commerce determined that a particular market situation existed in Korea that distorted the cost of production of CWP, and applied an upward adjustment to the cost of production based on a regression analysis submitted by Wheatland in the Petition ("regression analysis").  Prelim. DM at 12–13.  The regression analysis was submitted with the Petition and "quantifie[d] the impact of global steel excess capacity on the price of [hot-rolled steel coil] in Korea, and derive[d] a corresponding percentage adjustment factor that . . . account[ed] for the distortions inherent to an overcapacity-driven [particular market situation]." Id. at 10. Commerce conducted a sales-below-cost test and disregarded certain sales made at prices below the cost of production.  Id. at 17–18.  Commerce calculated normal value from the remaining above-cost home market sales for mandatory respondents NEXTEEL and Husteel.  Id. at 18.

In the Final Results, Commerce used the methodology applied in the Preliminary Results but corrected the amount of the particular market situation adjustment to the cost of production for costs related only to hot-rolled steel coil instead of "all direct material costs."  Final IDM at 3.  Commerce assigned

weighted-average dumping margins of 27.28% for NEXTEEL, 4.92% for Husteel, and an all-others rate of 21.01%, which applied to Hyundai Steel and SeAH. <u>Final Results</u>, 85 Fed. Reg. at 71,056.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of an antidumping duty order. The Court shall hold unlawful any determination found to be unsupported by substantial record evidence or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Particular Market Situation

#### A. Governing Law

Commerce determines antidumping duties by calculating the amount by which the normal value of subject merchandise exceeds the export price or the constructed export price for the merchandise. 19 U.S.C. § 1673. When reviewing antidumping duties in an administrative review, Commerce must determine: (1) the normal value and export price or constructed export price of each entry of the subject merchandise, and (2) the dumping margin for each such entry. <u>Id.</u> § 1675(a)(1)(B), (a)(2)(A). The statute dictates the steps by which Commerce may

calculate normal value "to achieve a fair comparison" with export price or constructed export price. Id. § 1677b(a).

First, the statute specifies the methodology for Commerce to determine which sales should be considered and disregarded in calculating normal value. Normal value is "the price at which the foreign like product is first sold . . . in the exporting country . . . in the ordinary course of trade." Id. § 1677b(a)(1)(B)(i). Sales outside the ordinary course of trade are excluded from normal value. "Ordinary course of trade" is defined in Section 1677(15) as excluding: (1) sales made at less than the cost of production, and (2) sales that cannot be compared properly with the export price or constructed export price due to a particular market situation. Id. § 1677(15)(A), (C). To determine whether "sales . . . have been made at prices that represent less than the cost of production," the statute directs Commerce to conduct the sales-below-cost test. Id. § 1677b(b)(1). The cost of production is defined by statute to include the cost of materials and processing, amounts for selling, general, and administrative expenses, and the cost of all containers and expenses incidental for shipment. Id. § 1677b(b)(3). Sales that Commerce determines, by application of the sales-below-cost test, were made at prices below the cost of production or that Commerce determines were made in a particular market situation, are outside the ordinary course of trade and are disregarded from the calculation of normal value. See id. § 1677b(b)(1),

(a)(1)(B)(i). "Whenever such sales are disregarded, normal value shall be based on the remaining sales of the foreign like product in the ordinary course of trade." Id. § 1677b(b)(1).

Second, when using market prices to determine normal value, Commerce may make certain adjustments to the remaining home market prices. The statute lists authorized adjustments for incidental shipping, delivery expenses, and direct taxes, and for differences between the subject merchandise and foreign like products in quantity, circumstances of sale, or level of trade. Id. § 1677b(a)(6), (7).

Third, when using home market sales for normal value, if Commerce cannot determine the normal value of the subject merchandise based on home market sales, then Commerce may use qualifying third-country sales or a constructed value as a basis for normal value. Id. § 1677b(a)(4), (a)(1)(B)(ii), (b)(1). Constructed value represents: (1) the cost of materials and fabrication or other processing of any kind used in producing the merchandise; (2) the actual amounts incurred and realized for selling, general, and administrative expenses, and for profits, in connection with the production and sales of a foreign like product, in the ordinary course of trade, for consumption in the foreign country; and (3) the cost of packing the subject merchandise. Id. § 1677b(e). When calculating constructed value, if Commerce determines that a particular market situation exists "such that

the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, [then] [Commerce] may use . . . any other calculation methodology." Id.

### B. Unauthorized Adjustment to the Cost of Production for the Sales-Below-Cost Test

For purposes of determining whether sales were made at less than cost, Commerce adjusted the reported costs of production of hot-rolled steel coil, a primary CWP input, based on its determination that a particular market situation in Korea distorted the cost of hot-rolled steel coil. See Final IDM at 3, 7; Prelim. DM at 12–13. Defendant argues that the plain language of Section 504 of the Trade Preferences Extension Act of 2015 ("TPEA"), Pub. L. No. 114-27, § 504, 129 Stat. 385, and its legislative history "demonstrate that Commerce possesses the discretion to adjust NEXTEEL's [hot-rolled steel coil] input purchase prices for calculating cost of production as part of Commerce's sales-below costs test . . . and establish that Commerce has discretion when [] selecting a calculation methodology to address distortions in a particular market." Def.'s Resp. at 26. Plaintiffs counter that the statute permits a particular market situation adjustment only in the course of determining constructed value, not when determining whether home market sales were made at less than the cost of production. NEXTEEL's Br. at 10–23; SeAH's Br. at 2 (incorporating NEXTEEL's arguments); Hyundai

Steel's Br. at 7 (incorporating NEXTEEL's arguments).  Defendant-Intervenors contend that Commerce is authorized by Section 1677b(e)(1) to use "any other calculation methodology," and "[t]he fact that the authorization is contained in a section of the statute concerning constructed value does not in itself limit the scope of the explicit authority to use other calculation methodologies."  Def.-Intervs.' Resp. at 7.

As the U.S. Court of International Trade has held repeatedly, the statute does not authorize a particular market situation adjustment to the cost of production when Commerce applies the sales-below-cost test to determine which home market sales to exclude from the calculation of normal value.  See Saha Thai Steel Pipe Pub. Co. v. United States, 43 CIT __, __, 422 F. Supp. 3d 1363, 1368–70 (2019); Husteel Co. v. United States, 44 CIT __, __, 426 F. Supp. 3d 1376, 1383–89 (2019); Borusan Mannesmann Boru Sanayi Ve Ticaret A.Ş. v. United States, 44 CIT __, __, 426 F. Supp. 3d 1395, 1411–12 (2020); Dong-A Steel Co. v. United States, 44 CIT __, __, 475 F. Supp. 3d 1317, 1337–41 (2020); Husteel Co. v. United States, 44 CIT __, __, 476 F. Supp. 3d 1363, 1370–73 (2020); Saha Thai Steel Pipe Pub. Co. v. United States, 44 CIT __, __, 476 F. Supp. 3d 1378, 1382–86 (2020); Hyundai Steel Co. v. United States, 45 CIT __, __, Slip Op. 21-88 at 10–17 (July 19, 2021).

Commerce applied an adjustment to the cost of production calculation set

forth in Section 1677b(b)(3) for purposes of the sales-below-cost test pursuant to Section 1677b(b)(1). See Final IDM at 3, 7; Prelim. DM at 12–13. Commerce relied erroneously on Section 504 of the TPEA for the authority to adjust the cost of production for the sales-below-cost test. Commerce explained that:

> [W]here a [particular market situation] affects the [cost of production] of the foreign like product because it distorts the cost of inputs, it is reasonable to conclude that such a situation may prevent a proper comparison of the [export price] with normal value based on home market prices just as it would when normal value is based on [constructed value]. . . . [Section 1677b(e)] specifically includes the term "ordinary course of trade." Thus, the definition of that term, again, found in [Section 1677(15)], is integral to that [particular market situation] provision. Accordingly, [Commerce] disagree[s] with the argument that Commerce cannot analyze a [particular market situation] claim in determining whether a company's comparison-market sale prices were below cost, and therefore, are outside the "ordinary course of trade."

Final IDM at 8–9. In Commerce's view, the amendments provide Commerce "discretion to use 'any other calculation methodology' if costs are distorted by a [particular market situation], including for the purposes of [cost of production] under [19 U.S.C. § 1677b(b)(3)]." Id. at 10. In other words, Commerce made a particular market situation adjustment to costs based on Section 1677b(e). Commerce asserted that the cost-based particular market situation analysis and alternative calculation methodology set forth in Section 1677b(e) are available whether Commerce bases normal value on home market sales or constructed value. Commerce also asserted that the sales-below-cost test set forth in Section

1677b(b)(1), by relying on the phrase "ordinary course of trade" defined in Section 1677(15)(C) as excluding sales made in a particular market situation, authorizes Commerce to conduct the particular market situation analysis and adjust costs based on Sections 1677b(b)(1) and 1677(15)(C). Id. at 8–10.

Section 504 of the TPEA amended the statutory provisions governing constructed value. The amendment authorizes Commerce to use alternative cost methodologies when computing constructed value after making a particular market situation determination. The amended language provides:

> For purposes of paragraph (1) [in reference to calculating constructed value], if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority [Commerce] may use another calculation methodology under this part or any other calculation methodology.

19 U.S.C. § 1677b(e). The amended statute gives Commerce discretion to adjust the cost of production calculation methodology when determining constructed value if Commerce determines that a particular market situation exists. See id. Commerce cannot rely on Section 1677b(e) when Commerce bases normal value on home market sales. No part of the statute allows Commerce to use any other methodology when market sales are used for normal value. See Saha Thai Steel Pipe Pub. Co., 43 CIT at __, 422 F. Supp. 3d at 1368–70; Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1383–89; Borusan, 44 CIT at __, 426 F. Supp. 3d at 1411–

12; Dong-A Steel Co., 44 CIT at __, 475 F. Supp. 3d at 1340–41; Husteel, 44 CIT at __, 476 F. Supp. 3d at 1371; Saha Thai Steel Pipe Pub. Co., 44 CIT at __, 476 F. Supp. 3d at 1384; Hyundai Steel, 45 CIT at __, Slip Op. at 13. The "any other methodology" language is reserved solely for when normal value is determined by constructed value. Husteel Co., 44 CIT at __, 426 F. Supp. 3d at 1388.

With respect to Sections 1677b(b)(1) and 1677(15)(C), Defendant argues that Section 1677b(b)(1)'s reference to the phrase "ordinary course of trade" authorizes Commerce to conduct a cost-based particular market situation analysis and make an adjustment in the course of the sales-below-cost test. Def.'s Resp. at 27.

Section 1677b(b)(1) provides:

(b) Sales at less than cost of production

(1) Determination; sales disregarded

Whenever the administering authority has reasonable grounds to believe or suspect that sales of the foreign like product under consideration for the determination of normal value have been made at prices which represent less than the cost of production of that product, the administering authority shall determine whether, in fact, such sales were made at less than the cost of production. If the administering authority determines that sales made at less than the cost of production—

(A) have been made within an extended period of time in substantial quantities, and

(B) were not at prices which permit recovery of all costs

> within a reasonable period of time,
>
> such sales may be disregarded in the determination of normal value. Whenever such sales are disregarded, normal value shall be based on the remaining sales of the foreign like product in the ordinary course of trade. If no sales made in the ordinary course of trade remain, the normal value shall be based on the constructed value of the merchandise.

19 U.S.C. § 1677b(b)(1). Section 1677b(b)(1) sets forth the sales-below-cost test based on the calculation specified in Section 1677b(b)(3) to confirm that sales were made at less than the cost of production. Within Section 1677b(b) for "Sales at less than cost of production," the subsection 1677b(b)(1) for "Determination; sales disregarded" authorizes Commerce to disregard those below-cost sales as outside the ordinary course of trade. Id.

The plain language of the reference to "ordinary course of trade" provides that sales on which normal value are based must be in the ordinary course of trade. Id. § 1677b(b)(1), (a)(1)(B)(i). Sales made at less than cost, between affiliates, and in a particular market situation are excluded from the definition of "ordinary course of trade" in Section 1677(15). Thus, sales in those three categories are disregarded for purposes of calculating normal value based on market sales. Nothing in the statute grants Commerce the authority to modify the sales-below-cost test to permit a particular market situation analysis or adjustment, and the specificity of the sales-below-cost test leaves no ambiguity. See Conn. Nat'l Bank

v. Germain, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

In sum, although Section 504 of the TPEA amended Section 1677b(e) for "Constructed value" to grant Commerce the discretion to use an alternative calculation methodology, and Section 1677(15) for "Ordinary course of trade" to grant Commerce an additional ground on which it may disregard sales from the normal value calculation when using home market sales, the Section 504 amendment did not amend Section 1677b(b), which sets out the calculation of the cost of production for the sales-below-cost test to determine whether and which sales should be disregarded as outside the ordinary course of trade when normal value is based on home market sales. "[W]here 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Thomas v. Nicholson, 423 F.3d 1279, 1284 (Fed. Cir. 2005) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). Thus, the statute authorizes Commerce to disregard certain sales when basing normal value on home market sales, or to use an alternative calculation methodology upon a cost-based particular market situation determination when basing normal value on constructed value.

Commerce applied a cost-based particular market situation adjustment for purposes of the sales-below-cost test of Section 1677b(b)(1), while basing normal value on home market sales. The statute does not authorize Commerce to adjust the cost of production as an alternative calculation methodology when using normal value based on home market sales under Section 1677b(e) as claimed by Commerce. The statute also does not authorize Commerce to adjust the cost of production for purposes of the sales-below-cost test under Sections 1677b(b)(1) and 1677(15)(C) as claimed by Commerce. Section 1677b(e) applies only when Commerce bases normal value on constructed value. Because Commerce based normal value on home market sales, not constructed value, Section 1677b(e) is inapplicable. Nothing in Sections 1677b(b)(1) and 1677(15)(C) authorizes Commerce to adjust the cost of production for the sales-below-cost test. The Court concludes, therefore, that Commerce's particular market situation adjustment to the cost of production is not in accordance with the law. Because Commerce may not adjust the cost of production when using normal value based on home market sales, the Court does not consider the lawfulness or reasonableness of Commerce's adjustment calculation, particularly its reliance on Wheatland's submitted regression analysis.

### C. Unauthorized Particular Market Situation Determination

Commerce determined that a particular market situation distorted costs

based on the totality of four factors, namely: (1) Korean subsidies of hot-rolled steel coil; (2) Korean imports of hot-rolled steel coil from the People's Republic of China; (3) strategic alliances between Korean hot-rolled steel coil producers and CWP producers; and (4) distortions in the Korean electricity market. Final IDM at 8; see also Prelim. DM at 12. Plaintiffs argue that Commerce's particular market situation determination is not in accordance with the law and that the record does not support the existence of the four factors that are the basis of Commerce's determination. NEXTEEL's Br. at 23–46; SeAH's Br. at 2 (incorporating NEXTEEL's arguments); Hyundai Steel's Br. at 7 (incorporating NEXTEEL's arguments).

Commerce based its particular market situation determination on distortions in the cost of hot-rolled steel coil, a primary CWP input. Final IDM at 8, 14. Commerce explained:

> Section 504 of the TPEA added the concept of [particular market situation] in the definition of the term "ordinary course of trade," for purposes of [constructed value] under section [1677b(e)], and through these provisions for purposes of the [cost of production] under section [1677b(b)(3)]. [Section 504] of the TPEA states that "if a particular market situation exists such that the cost of materials and fabrication or other processing of any kind does not accurately reflect the cost of production in the ordinary course of trade, the administering authority may use another calculation methodology under the subtitle or any other calculation methodology." Thus, under section 504 of the TPEA, Congress has given Commerce the authority to determine whether a [particular market situation] exists within the foreign market from which the subject merchandise is sourced and to determine whether the

cost of materials, fabrication, or processing of such merchandise fail to accurately reflect the [cost of production] in the ordinary course of trade.

Final IDM at 7–8. Commerce made the particular market situation determination under Section 1677b(e) based on the assertion that Section 1677b(e)'s reference to "ordinary course of trade" incorporates Section 1677b(e) into the cost of production calculation in Section 1677b(b)(3). Id. at 7.

As discussed in the previous section, Section 1677b(e) applies expressly when Commerce bases normal value on constructed value. 19 U.S.C. § 1677b(e). Nothing in the statute can be read to authorize a cost-based particular market situation determination when Commerce bases normal value on home market sales. The statute does not provide for a cost-based particular market situation analysis when using home market sales to calculate normal value. Commerce made an unlawful particular market situation cost-based determination in this case, while basing normal value on home market sales. The Court concludes that Commerce's cost-based particular market situation determination is not in accordance with the law, and the Court thus does not consider whether Commerce's particular market situation determination is supported by substantial evidence on the record.

## CONCLUSION

The Court concludes that Commerce's cost-based particular market situation determination and subsequent adjustment are not in accordance with the law.

Accordingly, it is hereby

**ORDERED** that the Final Results are remanded for Commerce to reconsider its particular market situation determination and adjustment in light of this opinion; and it is further

**ORDERED** that this case will proceed according to the following schedule:

(1) Commerce shall file remand results on or before October 29, 2021;

(2) Commerce shall file the administrative record on or before November 12, 2021;

(3) Comments in opposition to the remand results shall be filed on or before December 3, 2021;

(4) Comments in support of the remand results shall be filed on or before December 17, 2021; and

(5) The joint appendix shall be filed on or before December 30, 2021.

    /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated: September 27, 2021
       New York, New York